SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Bernice Pisack v. B&C Towing, Inc. (A-17/18-18) (081492)**

**Argued October 24, 2019 -- Decided January 16, 2020**

**LaVECCHIA, J., writing for the Court.**

This appeal concerns consolidated putative class actions brought by plaintiffs whose vehicles were towed at the direction of local police and without plaintiffs' consent. Each plaintiff was charged for the non-consensual tow by a privately owned towing company that had a contract with the respective local government to perform that towing service. Plaintiffs brought suit challenging those charges in three class actions with common legal claims. Plaintiffs alleged that the fees imposed by the private companies violated the Predatory Towing Prevention Act (Towing Act), the Consumer Fraud Act (CFA), and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA).

One class action was dismissed on summary judgment and the other was allowed to proceed only as an individual case. Plaintiffs appealed. The Appellate Division reversed in a consolidated opinion. 455 N.J. Super. 225, 231-32 (App. Div. 2018).

The Appellate Division's decision explained that the Towing Act does not require a preliminary exhaustion of administrative remedies prior to filing a complaint in Superior Court, id. at 242; it considered and rejected the argument that defendants have derivative immunity under the Tort Claims Act (TCA) because the private towing companies were directed by the local police to tow plaintiffs' vehicles, id. at 244; it emphasized that the Towing Act expressly contemplates a CFA action, id. at 245; and it addressed the pivotal question whether the pre-2018 Towing Act limited the types of services for which a towing company can charge a fee and held that towing charges must be consistent with the limitations provided by the Act and its regulations, id. at 245-47.

In that last holding, the Appellate Division carefully reviewed and relied on the then-current language of the Towing Act, which required the Director to "establish a schedule of private property and other non-consensual towing and related storage services for which a towing company may charge a service fee." N.J.S.A. 56:13-14(a) (2018). The Act then provided that it is "an unlawful practice for [a]towing company that provides non-consensual towing services . . . [t]o charge a fee for a private property or other non-consensual towing or related storage service not listed on [that] schedule of services . . . except as may be permitted by the director by regulation." N.J.S.A. 56:13-

1

16(f)(1).  The Director's implementing regulations reinforced that command by providing that "[a] towing company shall not charge any fee for private property towing or other non[-]consensual towing and related storage services not included in [the Director's schedule]."  N.J.A.C. 13:45A-31.4(e).  Given that statutory and regulatory language, the Appellate Division reached the indisputable conclusion that "if a service is not listed on the Director's schedule, a towing company cannot charge for that service."  455 N.J. Super. at 247.

Finally, the Appellate Division addressed whether any of plaintiffs' asserted claims can be pursued as class actions, holding that, depending on the facts developed post-discovery, violations of the Towing Act and the CFA, as well as the TCCWNA, may be challenged in a class action.  Id. at 250.

The defendant towing companies filed motions for leave to appeal to challenge the Appellate Division's decision, which the Court granted.  236 N.J. 24, 25 (2018); 235 N.J. 477 (2018).  Those defendants now not only dispute the determinations listed above, but also assert that amendments made to the Towing Act after the Appellate Division issued its decision should be applied retroactively and would essentially resolve these disputes.

**HELD:**  The 2018 legislation amending the Towing Act does not have retroactive effect, and the Court agrees with the Appellate Division's construction of the pre-2018 Act.  The Court affirms the Appellate Division's thorough and thoughtful decision as to exhaustion of administrative remedies, derivative immunity, and the remand as to the Towing Act and CFA claims, all substantially for the reasons expressed in Judge Gilson's opinion.  The Court separately addresses whether plaintiffs can pursue claims under the TCCWNA and finds that plaintiffs are unable to state a claim under that statute.  The Court therefore reverses the judgment of the Appellate Division on that issue but affirms as to all others.

1.  In 2008, the Legislature enacted the Towing Act, codified at N.J.S.A. 56:13-7 to -23.  The Court reviews key provisions of that act as it existed at the time of the trial court and Appellate Division decisions.  After the Appellate Division rendered its decision, the Legislature amended the Towing Act, see L. 2018, c. 165.  Among the amendments effected by the 2018 legislation, the Legislature added a new subsection to N.J.S.A. 56:13-16, which provides in pertinent part that no provision of the Towing Act should be interpreted to prevent towing companies "from charging fees for non-consensual towing or related storage services in accordance with a duly-authorized fee schedule established by a municipality or other political subdivision of this State with respect to a vehicle that has been subject to non-consensual towing authorized by a law enforcement officer of this State or the political subdivision."  L. 2018, c. 165, § 3(i) (codified at N.J.S.A. 56:13-16(i).  The new section 16(i) took effect after the events that gave rise to this appeal. (pp. 5-10)

2

2. Three scenarios justify retroactive application of a legislative amendment: (1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant. (pp. 10-11)

3. Here, the Legislature did not state that the 2018 amendments to the Towing Act would have retroactive effect. Rather, the Legislature provided that the 2018 amendatory legislation "shall take effect immediately." L. 2018, c. 165, § 5. Those words bespeak an intent contrary to, and not supportive of, retroactive application. Defendants point to language in a Statement that accompanied the bill when introduced, which mirrored the language of the bill and described it as clarifying. Case law has consistently recognized that an amendment may be treated as curative provided it does not establish different or new standards but rather is designed to reaffirm and clarify the existing standards. The 2018 legislation incorporating the new subsection (i) substantially changed the Towing Act in a major way. Prior to the amendment, it was unlawful for a towing company to charge a fee not included within the Director's schedule. N.J.S.A. 56:13-16(f)(1) (2017). After the amendment, towing companies may charge fees not included in the Director's schedule if the fee is authorized by a municipal ordinance. N.J.S.A. 56:13-16(i) (2018). With that significant change, the Legislature substantively deviated from its prior approach in the Towing Act; the amendment therefore cannot be considered curative. Finally, the evidence and briefing submitted to the trial court and Appellate Division indicated that all parties expected the issues in this appeal to be governed by the prior version of N.J.S.A. 56:13-16. The 2018 legislation amending the Towing Act does not have retroactive effect and has no application in the present matter. (pp. 11-15)

4. After reviewing the procedural history of the consolidated cases, the Court affirms the determinations detailed in the "Held" paragraph above. (pp. 15-21)

5. The Court addresses separately the Appellate Division's determination that the TCCWNA provides a cause of action for vehicle owners who received towing bills with prohibited charges. Pisack, 455 N.J. Super. at 249. To assert a claim under the TCCWNA, a plaintiff must establish: first, that the defendant was a seller, lessor, creditor, lender or bailee or assignee; second, that the defendant offered or entered into a written consumer contract or gave or displayed any written consumer warranty, notice or sign; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by state or federal law; and finally, that the plaintiff is an aggrieved consumer. (pp. 21-24)

6. With respect to the first element, the owners of vehicles subjected to non-consensual towing clearly were not buying, leasing, or borrowing any money, property, or services from the towing companies. The Appellate Division agreed but found that the companies

3

are "bailees" under the Act when they "take a vehicle." Id. at 248. Here, no contract existed between the vehicle owners and the towing companies when the companies towed the vehicles, and it seems far from clear that a non-consensual or involuntary bailment is what the Legislature had in mind for purposes of authorizing a TCCWNA action that is premised on the idea that it is a consumer contract remedy. For bailment to constitute a contract for purposes of a TCCWNA claim, the Legislature likely intended contractual bailments for purposes of the TCCWNA, if at all. And, as for the second element of a TCCWNA claim, the only writing exchanged between the plaintiffs and the towing companies was the list of charges, which was provided after the plaintiffs paid to retrieve their vehicles. The Court cannot accept that such after-the-fact "bills" constituted a contract or notice to plaintiffs when plaintiffs had already paid the amount demanded to recover their cars. That could not constitute a "meeting of the minds." Given the contractual underpinning of the consumer remedy that the TCCWNA is designed to accomplish, that cause of action is ill-suited as a vehicle for plaintiffs to assert claims relating to their non-consensual relationship with the towing companies. The Court finds that plaintiffs are able to establish the final two elements of a TCCWNA claim but that they failed to establish elements one and two. Plaintiffs therefore cannot state a cause of action under the TCCWNA. The Court reverses the portion of the Appellate Division's judgment reinstating plaintiffs' TCCWNA claims. (pp. 24-31)

**The judgment of the Appellate Division is AFFIRMED IN PART and REVERSED IN PART.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.**

4

Bernice Pisack, on behalf of herself
and all others similarly situated,

Plaintiff-Respondent,

v.

B & C Towing, Inc.,

Defendant-Appellant,

and

Marie J. Cavalchire and
Alan Anthony Young,

Defendants,

and

B & C Towing, Inc.,

Defendant-Third-Party Plaintiff,

v.

The City of Newark,

Third-Party Defendant.

Eptisam Pellegrino, on behalf of herself
and all others similarly situated,

Plaintiff-Respondent,

v.

Nick's Towing Service, Inc.,

Defendant-Appellant,

and

Nicholas Testa and Susan Testa,

Defendants.

_____

Christopher Walker, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

All Points Automotive & Towing, Inc.,

Defendant,

and

Thomas Locicero,

Defendant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
455 N.J. Super. 225 (App. Div. 2018).

| Argued | Decided |
| --- | --- |
| October 24, 2019 | January 16, 2020 |

2

Gabriel H. Halpern argued the cause for appellant B & C Towing, Inc. (Pinilis Halpern, attorneys; Gabriel H. Halpern, on the briefs).

Jeremy B. Stein argued the cause for appellants Nick's Towing Service, Inc. (Hartmann Doherty Rosa Berman & Bulbulia, attorneys; Jeremy B. Stein and Paul S. Doherty, III, on the briefs).

Andrew R. Wolf argued the cause for respondents Bernice Pisack and Eptisam Pellegrino (The Wolf Law Firm, The Law Office of Christopher J. McGinn, and Law Office of Edwyn D. Macelus, attorneys; Andrew R. Wolf, David J. DiSabato, Lisa R. Bouckenooghe, Christopher J. McGinn, and Edwyn D. Macelus, on the briefs).

Matthew J. Giacobbe argued the cause for amicus curiae Garden State Towing Association (Cleary Giacobbe Alfieri Jacobs, attorneys; Matthew J. Giacobbe and Jessica V. Henry, on the briefs).

Isabella R. Pitt, Deputy Attorney General, submitted a brief on behalf of amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel, and Isabella R. Pitt, on the brief).

Michael R. McDonald submitted a brief on behalf of amicus curiae Tumino's Towing, Inc. (Gibbons, attorneys; Michael R. McDonald and Caroline E. Oks, on the brief).

---

JUSTICE LaVECCHIA delivered the opinion of the Court.

---

This appeal concerns consolidated putative class actions challenging the fees charged in connection with the non-consensual towing of vehicles at the direction of local police.[1] The putative class plaintiffs brought lawsuits against the towing companies that had municipal contracts to provide the towing services. These consolidated actions involve a common set of facts. None of the named plaintiffs consented to the towing of their vehicles. Each had his or her vehicle towed at the direction of local police. And, each plaintiff was charged for the non-consensual tow by a privately owned towing company that had a contract with the respective local government to perform that towing service.

In addition to a common set of basic facts, the actions asserted common legal claims. Plaintiffs alleged that the fees imposed by the private companies violated the Predatory Towing Prevention Act (Towing Act or the Act), N.J.S.A. 56:13-7 to -23, the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -211, and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18.

---

[1] There were initially three actions that were separately considered at the trial court level and consolidated before the Appellate Division into a single opinion. One action, captioned as Walker v. All Points Automotive & Towing, Inc., has not been appealed to this Court.

Defendants not only dispute plaintiffs' ability to pursue their causes of action but assert that amendments made to the Towing Act after the Appellate Division issued its decision should be applied retroactively and would essentially resolve these disputes.

Because the Towing Act lies at the center of this appeal, we begin by reviewing that Act and the amendments thereto and by determining which version of the legislation applies in this case.

## I.

We first summarize the Towing Act, in the form in which it existed when these causes of action arose; we then turn to the recent legislative amendment of that Act and consider whether the amendments apply retroactively, as defendants urge, or prospectively.

## A.

In 2008, the Legislature enacted the Towing Act, L. 2007, c. 193 (codified at N.J.S.A. 56:13-7 to -23), for the stated purpose "to create a coordinated, comprehensive framework to establish and enforce minimum standards for tow truck operators," N.J.S.A. 56:13-8(e) (2008).[2] The

---

[2] The Legislature has since changed all references to "tow truck operators" to "towing companies." See L. 2018, c. 165. At the same time, the Legislature also changed the use of the word "consumer" in the Towing Act to "person." Ibid. In this discussion, we adhere to the terminology of the version of the Towing Act in effect at the time these causes of action arose.

Legislature found that prior regulation of towing and towing companies was "fragmented among various State agencies and local governments," was "inconsistent or inadequate," and provided "insufficient recourse . . . under the law." N.J.S.A. 56:13-8(d). In addition, the Legislature found that some towing companies engaged in predatory practices such as "charging unwarranted or excessive fees." N.J.S.A. 56:13-8(a), (b). In particular, the Legislature found companies were "overcharging consumers for towing services provided under circumstances where the consumer ha[d] no meaningful opportunity to withhold consent." N.J.S.A. 56:13-8(b). Accordingly, the Legislature enacted the Towing Act, stating, as it was advancing this reform legislation, its intent to stop "predatory towing, where a vehicle is removed without the owner's notice or consent and the owner is charged an exorbitant fee for the vehicle's return." A. Consumer Affairs Comm. Statement to A. 4053 1 (May 17, 2007).

As enacted in 2008 and, where noted, amended by the Legislature in 2009, the Towing Act requires the Director of the Division of Consumer Affairs (Director) to "establish a schedule of private property and other non-consensual towing and related storage services for which a towing company may charge a service fee." N.J.S.A. 56:13-14(a). The Act instructs the Director to "specify services that are ancillary to and included as part of basic

6

. . . towing services for which no fees in addition to the basic towing service fee may be charged." Ibid.  And, the Act renders it unlawful for towing companies "[t]o charge a fee for private property or other non-consensual towing or related storage service not listed on the schedule of services for which a fee may be charged as established by the director except as may be permitted by the director by regulation." N.J.S.A. 56:13-16(f)(1).[3]  The

_____

[3]  The quoted language reflects the 2009 amendment to the Towing Act.  See L. 2009, c. 39, § 6.  The original 2008 version stated:

> It shall be an unlawful practice for any towing company . . . [t]o charge any fee other than any applicable contract rate or, in the absence of an applicable contract rate, the lesser of the rate set forth in an applicable schedule of fees or other charges established by municipal ordinance adopted pursuant to section 1 of L. 1979, c. 101 ([N.J.S.A.] 40:48-2.49) or the rate specified in the towing company's tariff on file with the director, or to charge a fee in an amount or for a service not listed on the tariff on file with the director at the time except as may be permitted by the director by regulation.  Nothing in this section shall preclude a towing company, acting on behalf of a club or association, from charging members of the club or association a fee at a rate established by contract between the towing company and the club or association which is lower than the rate specified in the towing company's tariff on file with the director, provided that membership in such club or association is

7

Towing Act makes breach of its provisions a violation of the CFA. N.J.S.A. 56:13-21(a). In addition to remedies available under the CFA, the Towing Act provides that "the director may order a towing company that has billed a consumer for any non[-]consensual towing or related storage an amount determined by the director to be unreasonable to reimburse the consumer for the excess cost with interest." N.J.S.A. 56:13-21(b).[4]

As required by N.J.S.A. 56:13-14(a), the Director promulgated a schedule of permitted fees for non-consensual towing and related storage services. See N.J.A.C. 13:45A-31.4. Plaintiffs allege that, in violation of the Towing Act, the towing company defendants here charged them fees that were

---

> generally available to the public and that such rates are
> filed with the director pursuant to section 8 of this act.
>
> [L. 2007, c. 193, § 10.]

[4] The quoted language here also reflects the 2009 amendment. See L. 2009, c. 39, § 10. The 2008 version stated:

> In addition to any penalties or other remedies provided
> in L. 1960, c. 39 ([N.J.S.A.] 56:8–1 et seq.), the director
> may order a towing company that has billed a consumer
> or insurer an amount in excess of the fee specified in its
> filed tariff for the service provided to reimburse the
> consumer or insurer for the excess cost with interest.
>
> [L. 2007, c. 193, § 15.]

8

authorized by municipal ordinance but were outside the schedule established by the Director. Thus, this appeal springs from the conflict between what defendants charged and what appears in the Director's schedule.

The trial courts and Appellate Division addressed plaintiffs' claims in each of the individual matters based on the law in effect at the time under the Towing Act and the Director's regulations promulgated pursuant to his authority under that Act.

B.

After the Appellate Division rendered its decision in Pisack v. B&C Towing, Inc., 455 N.J. Super. 225 (App. Div. 2018), however, the Legislature amended the Towing Act, see L. 2018, c. 165.

1.

Among the amendments effected by the 2018 legislation, the Legislature added a new subsection to N.J.S.A. 56:13-16, which provides in pertinent part:

> Nothing contained in any provision of the [Towing Act] shall be construed to prevent a towing company from charging a reasonable fee for storage of a vehicle that has been subject to non-consensual towing authorized by a law enforcement officer of this State or by any political subdivision of this State. Nothing contained in any provision of the [Towing Act] shall be construed to prevent a towing company from charging fees for non-consensual towing or related storage services in accordance with a duly-authorized fee schedule established by a municipality or other political subdivision of this State with respect to a vehicle that

9

has been subject to non-consensual towing authorized by a law enforcement officer of this State or the political subdivision, and there shall be a rebuttable presumption that fees charged in accordance with a fee schedule are not unreasonable or excessive.

[L. 2018, c. 165, § 3(i) (codified at N.J.S.A. 56:13-16(i)) (emphasis added).]

The amendatory legislation stated that it would "take effect immediately," L. 2018, c. 165, § 5; it therefore became effective when signed into law on December 20, 2018.

Defendants contend that the new section explicitly permits the practices challenged here, that is, the charging of "fees for non-consensual towing or related storage services in accordance with a duly-authorized fee schedule." We turn first to their contention that the new section 16(i) should govern here, even though it took effect after the events that gave rise to this appeal.

2.

"Settled rules of statutory construction favor prospective rather than retroactive application of new legislation." James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014). In determining whether a statute applies retroactively, a court's analysis will focus on "whether the Legislature intended to give the statute retroactive application." Ibid. (quoting In re D.C., 146 N.J. 31, 50 (1992)). We recognize three scenarios that justify retroactive application of a

10

legislative amendment: "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." Ibid.

Here, the Legislature did not state that the 2018 amendments to the Towing Act would have retroactive effect. Rather, the Legislature provided that the 2018 amendatory legislation "shall take effect immediately." L. 2018, c. 165, § 5. Those "words bespeak an intent contrary to, and not supportive of, retroactive application." Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 48 (2008); accord Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 389 (2016).

Still, defendants maintain that the 2018 legislation should be given retroactive effect because it was intended to be curative, and they point to the language in a Statement that accompanied the bill when introduced:

> The bill also clarifies that the Act does not prevent towing companies from charging a reasonable fee for storage of a vehicle that has been subject to non-consensual towing authorized by a law enforcement officer of this State or by a political subdivision if the law enforcement officer or an agent or employee of the political subdivision initiates, directs, orders, or requests the non-consensual towing of the vehicle. The bill further clarifies that the Act does not prevent towing companies from charging fees set forth in a duly-authorized fee schedule established by a municipality or other political subdivision of the State for non-consensual towing of a vehicle or related storage fees when such service is authorized by a law

11

enforcement officer or a political subdivision. The bill establishes a rebuttable presumption that fees charged in accordance with such a fee schedule are not unreasonable or excessive.

[Sponsor's Statement to A. 4782 6 (L. 2018, c. 165); accord A. Appropriations Comm. Statement to A. 4782 (L. 2018, c. 165).]

Essentially, that language mirrors the language of the bill and describes it as clarifying. However, defendants' reliance on the verb "clarifies" as dispositive of curative status is simply misplaced and is legally insufficient to satisfy the meaning of a curative amendment entitled to retroactive effect.

A statutory provision can be curative if it is "designed to 'remedy a perceived imperfection in or misapplication of the statute.'" James, 216 N.J. at 564 (quoting Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 386 (App. Div. 1992)); see also Ardan v. Bd. of Review, 231 N.J. 589, 611 (2018). That said, amendatory legislation is deemed curative "if it does 'not alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act.'" James, 216 N.J. at 564 (alterations in original) (quoting 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 605 (1999)). Case law has consistently recognized that an amendment may be treated as curative provided it "do[es] not establish different or new standards" but rather is "designed to reaffirm and clarify the existing standards." See D.C., 146 N.J. at 51. Our Court recently noted that "a legislative amendment is not

12

considered 'curative' merely because the Legislature has altered a statute so that it better serves public policy objectives." Ardan, 231 N.J. at 612 (first citing James, 216 N.J. at 572; then citing Johnson, 226 N.J. at 391-92).

The 2018 legislation incorporating the new subsection (i) substantially changed the Towing Act in a major way. Prior thereto, the Act's plain language restricted the imposition of fees for non-consensual towing and related services to those fees included in the schedule the Director was required to promulgate. With the pre-2018 version of the Towing Act, the Legislature expressly and unambiguously provided that it is unlawful "[t]o charge a fee for a private property or other non-consensual towing or related storage service not listed on the schedule of services for which a fee may be charged as established by the director except as may be permitted by the director by regulation." N.J.S.A. 56:13-16(f)(1). Now, the 2018 amendatory language qualifies that provision, stating that a towing company may charge "fees for non-consensual towing or related storage services in accordance with a duly-authorized fee schedule established by a municipality or other political subdivision of this State." L. 2018, c. 165, § 10(i) (codified at N.J.S.A. 56:13-16(i)).

The difference between the two iterations of the law is stark. Prior to the amendment, it was unlawful for a towing company to charge a fee not

included within the Director's schedule.  N.J.S.A. 56:13-16(f)(1) (2017).  After the amendment, towing companies may charge fees not included in the Director's schedule if the fee is authorized by a municipal ordinance.  N.J.S.A. 56:13-16(i) (2018).  With that significant change, the Legislature substantively deviated from its prior approach in the Towing Act; the amendment therefore cannot be considered curative.  The descriptor "clarifying" on which defendants seek to rely, moreover, is insufficient on its own to render the amendment curative:  the substantial change we have detailed here cannot become something less than it is by use of the descriptor "clarifying" when describing the amendment.

Finally, retroactive application of the 2018 amendments is not warranted based upon the parties' expectations in this matter.  The evidence and briefing submitted to the trial court and Appellate Division indicated that all parties expected the issues in this appeal to be governed by the prior version of N.J.S.A. 56:13-16, which provided that the Director's schedule controls the universe of permitted fees for non-consensual towing and related storage services.  See Ardan, 231 N.J. at 613.  The "expectations of the parties" do not come into play on the retroactivity here.  See ibid.

14

Accordingly, we conclude that the 2018 legislation amending the Towing Act does not have retroactive effect and has no application in the present matter.

## II.

We turn now to briefly summarize the facts and procedural histories as they were addressed by the Appellate Division in its consolidated opinion involving these three matters.

## A.

In Pisack v. B&C Towing, Inc., the Newark police contacted defendant B&C Towing, Inc. (B&C), to tow plaintiff Pisack's illegally parked vehicle. 455 N.J. Super. at 234. Although the vehicle belonged to plaintiff, her son was the primary driver, and he was the one who had parked it illegally. Ibid. Plaintiff's son retrieved the vehicle from B&C and paid the fee. Ibid. B&C charged $152.45 for the non-consensual service. Ibid. After plaintiff's son paid the fee, defendant provided him with an invoice that itemized the charges for towing, labor, an administrative fee, storage, and tax. Ibid.

Plaintiff filed a verified complaint in Superior Court against B&C, alleging that the $50.00 administrative fee -- $25.00 of which was required by the contract between the City of Newark and B&C, and $25.00 of which was permitted by a city ordinance -- violated the Towing Act. Ibid. In addition,

15

plaintiff included consumer claims under the CFA and the TCCWNA. She also filed for class certification. Id. at 235.

Following an unsuccessful motion to dismiss by defendant and ensuing discovery phase, the matter proceeded on cross-motions for summary judgment, with the court granting defendant summary judgment and dismissing plaintiff's complaint. Ibid. The motion court reasoned as follows: Plaintiff is not entitled to sue under the TCCWNA because she had no contractual relationship with defendant. Ibid. Next, the Towing Act requires exhaustion of administrative remedies prior to bringing an action under the Act in Superior Court, which plaintiff failed to do. Ibid. Third, defendant has derivative immunity from suit under the Tort Claims Act (TCA)[5] because the towing company was performing the functions as directed by the police. Ibid. Finally, with respect to the fees charged by defendant, all were authorized by a city ordinance. Ibid. As the motion court explained, "N.J.A.C. 13:45A-31.5 provides that a fee for non-consensual towing will be presumed unreasonable [only] if it exceeds the maximum amount that may be charged for the service according to a schedule of fees set forth in municipal ordinance."

In Pellegrino v. Nick's Towing Services, Inc., plaintiff Pellegrino was involved in a motor vehicle accident, after which her vehicle was towed at

---

[5] N.J.S.A. 59:1-1 to 12-3.

16

police direction by defendant Nick's Towing Services, Inc. Id. at 235. Pellegrino was charged and paid $448.36 for that tow. Ibid. Defendant later mailed her an invoice listing a flatbed/towing charge, yard charge, crash/collision wrap charge, credit card surcharge, administrative fee, sweep roadway/clean up charge, storage fee, and tax. Ibid.

Pellegrino filed a verified complaint on behalf of herself and others similarly situated, alleging that the charges in the invoice violated the Towing Act. She also brought claims under the CFA and TCCWNA. Id. at 235-36. Defendant moved to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Rule 4:6-2(e). The court denied that motion but also held that plaintiff may pursue her action only individually and not on behalf of a class. Id. at 236. Contrary to the court's ruling on Pisack's complaint, the motion court here did not regard Pellegrino's failure to exhaust administrative remedies as preventing her from bringing an action in court. See ibid.

A third matter was consolidated in the appeal before the Appellate Division. Id. at 232. In Walker v. All Points Automotive & Towing, Inc., a member of the River Edge Police Department directed that Walker's vehicle be towed after discovering Walker's vehicle registration had expired. Id. at 232-33. Defendant All Points Automotive & Towing, Inc. towed the vehicle to its

17

storage yard and charged Walker $290.85 for the non-consensual services, which included, among other charges, $35.00 for an administrative fee permitted by local ordinance. Id. at 233.

Walker filed a verified complaint against defendant, alleging that the administrative fee violated the Towing Act and that the invoice presented by defendant violated the TCCWNA. Walker's complaint was dismissed on summary judgment.[6] Ibid.

B.

In a consolidated opinion, the Appellate Division reversed all three motion court orders and remanded for further proceedings. Id. at 231-32. We granted motions for leave to appeal filed by defendants B&C Towing and Nick's Towing. 236 N.J. 24, 25 (2018); 235 N.J. 477 (2018). No petition was filed in the Walker matter.

The Appellate Division's consolidated opinion addressed numerous common issues presented in the matters that comprised the appeal: it

---

[6] The Walker motion court concluded that the Towing Act requires exhaustion of administrative remedies and that plaintiff failed to attempt to resolve the present matter with the Director before filing his complaint. The court also determined that defendant acted lawfully when imposing a charge consistent with local ordinance because the court did not view the Towing Act as preempting municipal ordinances that impose local fees for non-consensual towing.

18

explained that the Towing Act does not require a preliminary exhaustion of administrative remedies prior to filing a complaint in Superior Court, Pisack, 455 N.J. Super. at 242; it considered and rejected the argument that defendants have derivative immunity under the TCA because the private towing companies were directed by the local police to tow plaintiffs' vehicles, id. at 244; it emphasized that the Towing Act expressly contemplates a CFA action, id. at 245; and it addressed the pivotal question whether the pre-2018 Towing Act limited the types of services for which a towing company can charge a fee and held that towing charges must be consistent with the limitations provided by the Act and its regulations, id. at 245-47.

In that last, and core, component of its holding, the Appellate Division carefully reviewed and relied on the plain language of the pre-2018 version of the Towing Act, which required the Director to "establish a schedule of private property and other non-consensual towing and related storage services for which a towing company may charge a service fee." N.J.S.A. 56:13-14(a). The Act then provided that it is

> an unlawful practice for any private towing company or any other towing company that provides non-consensual towing services . . . [t]o charge a fee for a private property or other non-consensual towing or related storage service not listed on the schedule of services for which a fee may be charged as established

19

by the director except as may be permitted by the director by regulation.

[N.J.S.A. 56:13-16(f)(1).]

The Director's implementing regulations reinforced that command by providing that "[a] towing company shall not charge any fee for private property towing or other non[-]consensual towing and related storage services not included in [the Director's schedule]." N.J.A.C. 13:45A-31.4(e). Given that statutory and regulatory language, the Appellate Division reached the indisputable conclusion that "if a service is not listed on the Director's schedule, a towing company cannot charge for that service." Pisack, 455 N.J. Super. at 247. That sound interpretation of the plain language of the pre-2018 Towing Act is perfectly congruent with our reading of that legislation in connection with our analysis of the retroactivity of the 2018 amendments to the Act.

Finally, the Appellate Division addressed whether any of plaintiffs' asserted claims can be pursued as class actions, holding that, depending on the facts developed post-discovery, violations of the Towing Act and the CFA, as well as the TCCWNA, may be challenged in a class action. Id. at 250.

We affirm the thorough and thoughtful decision of the Appellate Division authored by Judge Gilson as to those issues, including the remand as

20

to the Towing Act and CFA claims, substantially for the reasons expressed in the Appellate Division opinion. We address separately the Appellate Division's discussion of whether plaintiffs can pursue claims under the TCCWNA.

## III.

## A.

The Appellate Division held that the TCCWNA provides a cause of action for vehicle owners who received towing bills with prohibited charges. Id. at 249.

The TCCWNA provides that

> [n]o seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

> [N.J.S.A. 56:12-15.]

That provision further defines a consumer as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." Ibid.

21

The Appellate Division first concluded that vehicle owners are consumers within the meaning of the TCCWNA. Pisack, 455 N.J. Super. at 247. The court reasoned that vehicle owners are defined as consumers under the Towing Act, and that the Towing Act and the TCCWNA should be construed consistently. Id. at 247-48. According to the court, both the Towing Act and TCCWNA are remedial legislation intended to protect consumers and, as such, it is "logical to give consistent construction to terms used in both statutes." Id. at 248. Further, the court reasoned that a vehicle owner is a consumer under the TCCWNA because such owners bail their vehicles to the towing companies. Ibid. While acknowledging that bailment is generally established by contract, the court noted that a formal contract is not needed. Ibid. Thus, "when towing companies take a vehicle, they are doing so as bailees." Ibid. Therefore, vehicle owners are consumers under the TCCWNA, which defines consumers as individuals who, inter alia, bail property. Ibid.

Second, the appellate court concluded that the bills issued by the towing companies constitute consumer contracts or notices within the meaning of the TCCWNA. Id. at 249. The court reasoned that the TCCWNA is entitled to broad construction given its remedial purpose and, as such, a writing need not be a formal contract, warranty, notice, or sign to fall under the TCCWNA's

22

reach. Id. at 248-49. Further, the court reasoned that the bills and invoices given to vehicle owners are required to complete the consumer transaction because the Towing Act regulations (1) assume that the towing companies will issue a bill for non-consensual towing services and (2) require towing companies to keep the invoices for such non-consensual towing services for three years. Id. at 249 (citing N.J.A.C. 13:45A-31.4(i) to (k); N.J.A.C. 13:45A-31.9(a)(1)).

Finally, the court concluded that the prohibited charges billed by the towing companies "are the type of deceptive consumer transaction that the Legislature aimed to prevent under the TCCWNA." Ibid. The court reasoned that the inclusion of such prohibited charges in the bill deceived the vehicle owners into thinking that such charges are enforceable. Ibid. However, the charges were not permitted by the Towing Act and, therefore, violated a clearly established right or responsibility under the TCCWNA. Ibid.

## B.

We begin our review of this issue by examining the fundaments of a TCCWNA action in order to assist our determination of whether the statute was contemplated for use in this type of circumstance.

The Legislature enacted the TCCWNA "to prevent deceptive practices in consumer contracts." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 68 (2017)

23

(quoting <u>Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.</u>, 207 N.J. 428, 457 (2011)); <u>see also</u> <u>Spade v. Select Comfort Co.</u>, 232 N.J. 504, 515 (2018).

To assert a claim under the TCCWNA, a plaintiff must establish

> first, that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid"; second, that the defendant offered or entered into a "written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign"; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that "violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee" as established by State or Federal law; and finally, that the plaintiff is an "aggrieved consumer."
>
> [<u>Spade</u>, 232 N.J. at 516 (alterations in original) (quoting N.J.S.A. 56:12-15, -17).]

The TCCWNA issue in this appeal turns on whether plaintiffs can satisfy the first two elements. If plaintiffs can establish those two elements, we do not view the third or fourth elements as impediments. That said, we are unpersuaded that plaintiffs satisfy the first two elements necessary for a TCCWNA claim.

With respect to the first element, the owners of vehicles subjected to non-consensual towing clearly were not buying, leasing, or borrowing any money, property, or services from the towing companies. It would distort the ordinary usage of such terms to view these defendant towing companies as

24

sellers, lessors, creditors, or lenders.  The Appellate Division agreed but found that the companies are "bailees" under the Act when they "take a vehicle." Pisack, 455 N.J. Super. at 248.

"The elements of 'bailment' are delivery of personal property by one person to another in trust for a specific purpose, acceptance of such delivery, and express or implied agreement to carry out the trust and return of the property to the bailor."[7]  Mattson v. Aetna Life Ins. Co., 124 F. Supp. 3d 381, 393 (D.N.J. 2015) (quoting Sgro v. Getty Petroleum Corp., 854 F. Supp. 1164 1174-75 (D.N.J. 1994)).  Here, pursuant to direction by police officers, the towing companies had lawful possession of the plaintiffs' vehicles, but the vehicles were towed at the direction of the police without the plaintiffs' consent.  Pisack, 455 N.J. Super. at 232.  Thus, while the privately owned towing companies contracted with the municipalities to perform towing services, we do not view that as creating, in essence, an express or implied contract between the vehicle owners and the companies for purposes of a TCCWNA analysis.

_____

[7] See also Black's Law Dictionary 174 (11th ed. 2019) (defining "bailment" as "[a] delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose, usu. under an express or implied-in-fact contract").

25

We acknowledge that New Jersey law is not fully settled with respect to "whether, in addition to possession and control, a contract is essential to the existence of a bailment." McGlynn v. Parking Auth. of Newark, 86 N.J. 551, 557 (1981). There is a trend toward "deemphasiz[ing] the contractual feature of the transaction and to emphasize the nature of the relationship between the parties when one transfers possession of goods to another." Ibid. (citing Marsh v. Am. Locker Co., 7 N.J. Super. 81, 84 (App. Div.), aff'd o.b., 6 N.J. 81 (1950)); see also State v. Carr, 118 N.J.L. 233, 234 (Sup. Ct. 1937) (noting bailment "is a relationship that ordinarily rests in contract" but acknowledging "a class of bailments, quasi-contractual in nature" where one must keep property "safely and restore it or deliver it to the owner").

Here, no contract existed between the vehicle owners and the towing companies when the companies towed the vehicles. Once the companies had lawful possession of the vehicles, one could argue that they became the bailees of the property, despite the lack of contract, and had to safely deliver the property to the owner. See Carr, 118 N.J.L. at 234. However, it seems far from clear that a non-consensual or involuntary bailment is what the Legislature had in mind for purposes of authorizing a TCCWNA action that is premised on the idea that it is a consumer contract remedy.

26

The purpose of the TCCWNA is "to prevent deceptive practices in consumer contracts." Dugan, 231 N.J. at 68 (emphasis added) (quoting Kent Motor Cars, Inc., 207 N.J. at 457). "[T]he Legislature enacted the TCCWNA to permit consumers to know the full terms and conditions of the offer made to them by a seller or of the consumer contract into which they decide to enter." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 442-43 (2013) (emphases added). There was no "meeting of the minds" here between the vehicle owners and the towing companies before the vehicles came into the companies' possession. See Pisack, 455 N.J. Super. at 232. Plaintiffs here did not agree to form a contractual relationship with defendants because they did not agree to have their cars towed. Thus, while in certain circumstances the law may recognize that a bailment exists without a contract -- imposing one out of fairness and for the protection of the property -- we do not see its role in supporting the existence of a TCCWNA claim. For bailment to constitute a contract for purposes of such a claim, we believe that the Legislature likely intended contractual bailments for purposes of the TCCWNA, if at all.

And, as for the second element of a TCCWNA claim, namely whether defendants can be said to have offered or entered into a written consumer contract or gave or displayed any written consumer warranty, notice, or sign, it bears noting at the outset that the only writing exchanged between the

27

plaintiffs and the towing companies was the list of charges, which was provided after the plaintiffs paid to retrieve their vehicles. See Shelton, 214 N.J. at 441-42. The Appellate Division determined that "[t]he bills issued by the towing companies are consumer contracts and notices within the meaning of the TCCWNA." Pisack, 445 N.J. Super. at 249. The court reasoned that the bills "act as the 'writings required to complete the consumer transaction'" because the Towing Act regulations require towing companies to issue a "bill" for non-consensual towing services. Ibid. (quoting N.J.S.A. 56:12-1).

As remedial legislation, the TCCWNA is "entitled to a broad interpretation." Shelton, 214 N.J. at 442. However, the court's interpretation is quite expansive. The towing companies gave the "bills" to the vehicle owners after they paid to retrieve their cars. We simply cannot accept that such after-the-fact "bills" constituted a contract or notice to plaintiffs when plaintiffs had already paid the amount demanded to recover their cars. That could not constitute a "meeting of the minds." The vehicle owners had no choice but to pay the fee in order to retrieve their cars.

Given the contractual underpinning of the consumer remedy that the TCCWNA is designed to accomplish, that cause of action is ill-suited as a vehicle for plaintiffs to assert claims relating to their non-consensual relationship with the towing companies.

28

Because we are persuaded that plaintiffs cannot meet the first two elements of a TCCWNA cause of action, we need not delve deeply into the other two elements.

Suffice it to say, as to the third element of a TCCWNA claim, that a plain reading of N.J.S.A. 56:13-16(f)(1) of the Towing Act and its accompanying regulation, N.J.A.C. 13:45A-31.4(e), makes clear that the services and fees delineated by the Director encompassed the entire universe of appropriate fees that could be charged by a towing company in the context of such private non-consensual towings prior to the 2018 amendment. Thus, "if a service is not listed on the Director's schedule, a towing company cannot charge for that service." Pisack, 455 N.J. Super. at 247. Because the defendant towing companies charged for services not listed on the Director's schedule, they violated the regulation. In violating the regulation, defendants violated a "clearly established legal right" under the TCCWNA. Therefore, charging a fee not permitted by N.J.A.C. 13:45A-31.4(a) and (e) can be a violation under the TCCWNA if the other elements of the statute are met. See Spade, 232 N.J. at 520.

Finally, as to the fourth element, we have no doubt that plaintiffs can establish that they are aggrieved consumers. In Spade, we held that "[i]n the absence of evidence that the consumer suffered adverse consequences as a

29

result of the defendant's regulatory violation, a consumer is not an 'aggrieved consumer' for purposes of the TCCWNA." 232 N.J. at 524. But here, plaintiffs paid the unlawful fees -- fees that were outside the scope of the Director's schedule in violation of N.J.A.C. 13:45A-31.4(a) and (e). Thus, plaintiffs clearly suffered an "adverse consequence[]" because they paid more than they would have had the towing companies followed the regulation. See Spade, 232 N.J. at 524.

Notwithstanding their ability to establish the final two elements of a TCCWNA claim, plaintiffs failed to establish elements one and two. They therefore cannot state a cause of action under the TCCWNA.

For that reason, we reverse the portion of the Appellate Division's judgment reinstating plaintiffs' TCCWNA claims. We affirm the judgment of the Appellate Division on all other points, substantially for the reasons set forth in that court's opinion. That includes the appellate court's holding that towing charges must be consistent with the limitations provided by the Act and its regulations. Having determined that the 2018 amendments were intended to apply prospectively, we agree with that court's construction of the pre-2018 Act.

## IV.

The judgment of the Appellate Division is affirmed in part and reversed in part.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.